## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MANASSAS TRAVEL, INC., | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| N&N TRAVEL & TOURS, INC., TADAKO NEWMAN, DOES 1-50 | |
| **Defendants.** | **Case No. 2:06CV00143 DAK** |

This matter is before the court on Defendants N&N Travel & Tours, Inc. and Tadako Newman's Motion to Dismiss. A hearing on the motion was held on July 6, 2006. At the hearing, Defendants were represented by Todd D. Weiler and Gregory P. Sapire, and Plaintiff was represented by Brian W. Steffensen. The court took the matter under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

### BACKGROUND

In 2001, N&N Travel & Tours, Inc. ("N&N"), a California corporation owned and operated chiefly within Nevada by Tadako Newman, successfully bid a contract to provide travel services for the United States Air Force Education Training Command based in Bexar County, Texas ("AETC Contract"). The AETC Contract included travel services to eighteen bases in

1

five different states, none of which were located in Utah.  N&N's managers for the contract were

based in San Antonio, Texas.  Manassas Travel, Inc. ("MTI"), a Nevada corporation with its

primary place of business currently in Park City, Utah, was included in the AETC Contract as

one of six subcontractors.  It is unclear where MTI's managers were located at the formation of

the AETC Contract.  The evidence before the court indicates that MTI's managers were working

out of Virginia.  According to Ms. Newman's affidavit and argument, N&N did not have any

Utah-based communication or contacts with MTI at the time the AETC Contract was formed.

Instead, Ms. Newman asserts that such contacts were established and developed in Virginia and

Texas.

        MTI was given responsibility for providing travel services to two bases in Alabama and,

at some point within the AETC Contract, began using Utah-based personnel to fulfill its

obligations.  MTI President Paula Wild's affidavit generally states that N&N was advised and

knew that a portion of MTI's obligations would be (and were) performed by Utah personnel and

that services would be (and were) performed in Utah.  Furthermore, both N&N and Ms. Newman

purportedly had communications and contact with MTI's Utah-based personnel.  These

employees, however, are not identified by name or title, and they did not provide affidavits.

Plaintiff also broadly states that Utah is the situs of the AETC services upon which this lawsuit is

based.  However, the record offers no specific facts or details to advance any of these assertions.

While Plaintiff also attested that Ms. Newman traveled to Utah, the only specific evidence before

the court is that Ms. Newman's sole trip to Utah consisted of a layover in the Salt Lake City

International Airport on the way to Washington D.C.  In 2004, Ms. Newman admittedly met with

Ms. Wild (who has been a resident of Utah for a number of years), but such meetings apparently

2

took place solely in Nevada.

In 2003, litigation arising out of the AETC Contract was instituted in Bexar County, Texas by a third party (Merritt Chisik) and involved both N&N and MTI ("Texas Case").  In connection with this case, Plaintiff asserts that N&N improperly used AETC Contract revenues rightfully belonging to MTI and other subcontractors in order to pay its legal expenses. Furthermore, Plaintiff argues that Ms. Wild and Ms. Newman reached an oral agreement early in 2004 (while the Texas Case was still being litigated) in which Ms. Newman agreed to sell 100% of the stock of N&N to MTI for $1,000.  Ms. Newman allegedly breached this agreement by refusing to sell the stock.  The AETC Contract eventually expired on or about December 31, 2005.

At some point during the pendency of the Texas Case, N&N initiated suit against MTI and sought declaratory relief.  Whether this relief included a declaration that there was not an oral agreement over sale of N&N's stock is unclear.  What is clear is that after "a pattern and practice of dilatory tactics" developed with the specific intent to delay proceedings, the Texas court found that MTI had engaged in "egregious" misconduct.  As a sanction for this misconduct, the Texas Court rendered default judgment in N&N's favor against MTI and, in part, granted the following relief:

(1)    The AETC Contract did not give rise to a fiduciary duty owed by N&N to MTI.
(2)    MTI is not entitled to an accounting from N&N.
(3)    MTI waived any claims against N&N for any portion of any share of net profits generated under the AETC Contract to which MTI might have been entitled.
(4)    MTI may not contest N&N's payment from AETC Contract revenues of the attorneys' fees in connection with the Texas Case.
(5)    MTI may not contest that N&N's legal expenses for the AETC Contract were reasonable and necessary.
(6)    N&N made no false or misleading material representation to MTI in connection with the AETC Contract.

Plaintiff currently asserts that this judgment is null and void because the Texas court lacked subject matter jurisdiction (the court is only authorized to handle judgments below $100,000 and Plaintiff asserts that the Texas judgment is above that limit). Furthermore, Plaintiff asserts that it was unrepresented at the time the judgment was given, and thus this judgment is unfair and should not be upheld. However, a letter from Ms. Wild establishes that it was Plaintiff and not Plaintiff's counsel who attempted to terminate representation just days before the judgment was given. Defendants also attest that the Texas court did not allow Plaintiff to terminate its counsel and that Plaintiff was thus represented when judgment was rendered.

On February 16, 2006, just three weeks before the Texas judgment was decreed, Plaintiff instigated the present suit. Plaintiff seeks relief from this court in ten different counts against Defendants. Those counts include:

(1) breach of oral contract for failing to transfer 100% of N&N's stock to Plaintiff;
(2) declaratory relief suspending the Texas lawsuit pending resolution of Plaintiff's claim above;
(3) breach of fiduciary duty;
(4) fraud;
(5) breach of contract for deducting attorneys' fees from gross revenues;
(6) conversion;
(7) exemplary damages for both conversion and fraud;
(8) attorneys' fees for these claims;
(9) an accounting of all funds received and disbursed from the AETC Contract; and
(10) additional declaratory and injunctive relief to stop distribution of N&N's funds from the AETC Contract because N&N is otherwise insolvent.

Within the Plaintiff's Verified Memorandum in Opposition to Defendants' Motion to Dismiss, Plaintiff has declared for the first time that a third party, Manassas Travel Settlement Corporation ("Manassas Settlement"), is now the real party at issue and was assigned these claims on January 31, 2006. Plaintiff has shown that Manassas Settlement was incorporated in

4

Utah on the date of the alleged assignment.  However, no other documentation or evidence of this assignment has been offered to the court.  Defendants now bring this motion to dismiss all of Plaintiff's claims.

**DISCUSSION**

Defendants argue that Plaintiff's Complaint should be dismissed on the following alternative grounds: (1) this court lacks personal jurisdiction over Defendants; (2) this court lacks subject matter jurisdiction because there is no diversity of citizenship between the parties; (3) this court is an improper venue; and (4) the doctrine of *res judicata* precludes the claims and issues within Plaintiff's case from being re-litigated in Utah.  Since a determination that a district court lacks jurisdiction moots any other challenge to the claims, *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004), this court will first determine Defendants' jurisdictional arguments.  While a federal court customarily resolves doubts about subject matter first, there is no jurisdictional hierarchy which precludes an inquiry into personal jurisdiction before subject matter jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577-78 (1999).  Thus, this court can "address jurisdictional issues in any order [it] find[s] convenient." *D.L.*, 392 F.3d at 1229.  Accordingly, this court will first examine personal jurisdiction before proceeding to an examination of subject matter jurisdiction.

**I.      Personal Jurisdiction**

When a court's personal jurisdiction is contested, the plaintiff "bears the burden of establishing personal jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists.  *Purco Fleet*

*Servs.*, *Inc. v. Towers*, 38 F. Supp 2d 1320, 1322 (D. Utah 1999) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). While all factual disputes must be resolved in favor of the plaintiff, "only the well pled facts of [the] plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz*, 55 F.3d at 1505.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Medical*, 196 F.3d at 1295 (internal quotations omitted). There are two types of jurisdiction that a court may exercise over non-resident defendants – general or specific.

## A.     General Jurisdiction

General jurisdiction permits a court to exercise power over a defendant regardless of the subject of the claim asserted. *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). For general personal jurisdiction to exist under Utah law, the defendant "must be conducting substantial and continuous local activity." *Id.* The Utah Court of Appeals has highlighted twelve factors that are relevant to the issue of general personal jurisdiction:

> Whether the corporate defendant is: 1. engaged in business in the state; 2. licensed to do business in the state; 2. owning, licensing, or controlling property (real or personal) or assets in this state; 5. present in that shareholders reside in this state; 6. maintaining phone or fax listings in this state; 7. advertising or soliciting business in this state; 8. traveling to this state by way of salespersons, etc.; 9. paying taxes in this state; 10. visiting potential customers in this state; 11. recruiting employees in this state; 12. generating a substantial percentage of its national sales through revenue generated from instate customers.

*Soma Medical*, 196 F.3d at 1295-96 (quoting *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930-31 (Utah Ct. App. 1998)).

Defendants argue that general jurisdiction is inappropriate because Plaintiff is unable to demonstrate that either Defendant has continuous and systematic contacts with the state of Utah. Plaintiff argues that since N&N has sought to domesticate the judgment from the Texas Case here in Utah, it has affirmatively chosen to submit itself to the jurisdiction of Utah courts. Plaintiff also asserts that Ms. Newman has submitted herself to the jurisdiction of this court because she has attempted to continue litigating the disputes between N&N and MTI in the state courts of Utah.

According to the *Buddensick* factors listed above, Plaintiff has failed to show that either Defendant was conducting "substantial and continuous" local activities that would establish general personal jurisdiction. The evidence in the record does not establish that even one of the twelve factors has been satisfied in this case. While Plaintiff asserts that Defendants have subjected themselves to general jurisdiction by seeking to enforce the Texas judgment in Utah and by litigating this dispute, such assertions are not supported by either case law or statute, are not included among the *Buddensick* factors, and would discourage future enforcement of out-of-state judgments. Accordingly, the court concludes that Defendants are not subject to general jurisdiction in Utah.

**B.    Specific Jurisdiction**

Next, this court must analyze whether Defendants are subject to specific jurisdiction in this court. Specific jurisdiction grants a court power over a defendant only with respect to claims arising out of a defendant's particular activities in the forum state. *See Arguello*, 838 P.2d at 1122. In order for specific jurisdiction to exist, a defendant must have "minimum local contacts." *Id.* The test in determining whether specific personal jurisdiction exists over

7

nonresident defendants involves two considerations: first, "whether Utah law confers personal jurisdiction over the nonresident defendants"; and second, "whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *State ex. Rel. W.A.*, 63 P.3d 607, 612 (Utah 2002).  Because Utah's long-arm statute is intended to be interpreted as broadly as the due process clause of the Fourteenth Amendment, Utah Code Ann. § 78-27-22, courts often analyze the due process requirements first since "any set of circumstances that satisfy due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citations omitted).  "Minimum contacts" are established "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to those activities.'" *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted)).  If a defendant's activities create sufficient minimum contacts, the court will then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

In determining whether a defendant's contacts are sufficient, the court should "examine the quantity and quality of [that defendant's] contacts with Utah, including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual

course of dealing, to determine whether the exercise of personal jurisdiction over [a defendant] comports with due process." *Soma Medical*, 196 F.3d at 1298; *see also Arguello*, 838 P.2d at 1122.

  In this case, the quantity and quality of Defendants' contacts with Utah appear too weak to comport with due process. Defendants' contacts with Utah are limited to their general associations and communications with MTI personnel who happen to reside in this state. Because such associations and communications fail to show that Defendants purposefully directed their activities at Utah, they are not sufficient to comport with due process and allow Defendants to be subject to jurisdiction in this state.

  In a factually similar case, the court in *Soma Medical* did not find that a defendant's limited communications with Utah citizens (a signature card mailed to the plaintiff in Utah, two letters sent to plaintiff soliciting signature verification, fourteen other written communications, and a few wire transfers of funds to Utah) were enough to establish minimum contacts. 196 F.3d at 1299. Here the contacts presented by Plaintiff are weaker than those presented in *Soma Medical*. Even accepting that MTI personnel carried out parts of the AETC Contract in Utah and that both Defendants had some contact with these employees, Plaintiff has not provided any specific facts detailing what type of work its Utah employees did in carrying out the AETC Contract or the nature of Defendants' purported contacts with these employees. Thus, it has not been established that MTI's Utah connections were of any consequence to N&N or Ms. Newman. *See id.* (finding that "[t]he fact that Soma happened to be a resident of Utah was of no consequence to [defendant]"). Plaintiff does not appear to dispute that at the time the AETC Contract was made, N&N dealt primarily with Virginia- and Texas-based employees.

Furthermore, the bases that MTI serviced were located in Alabama and the governmental office overseeing the project was located in Texas.  While Ms. Newman purportedly visited Utah, her visit consisted of nothing more than a short layover at the Salt Lake International Airport before continuing on to Washington D.C.  Consequently, "[t]here is no indication that Utah had anything but a fortuitous role in the parties past dealing or would have any role in their continuing relationship."  *Id.*

Instead of Defendants "purposefully directing" their actions at Utah, the record indicates that Plaintiff unilaterally created all of the contacts in Utah by assigning its own Utah-based personnel to the AETC Contract.  *See Far W. Capital Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).  Regardless of whether Defendants knew of these assignments, there are no facts supporting the notion that Defendants affirmatively solicited business or employment from Utah residents.  Instead, the facts indicate that MTI was based in Virginia and Nevada at the time the AETC Contract was created.  Because Plaintiff's unilateral decision to use Utah-based personnel does not support a finding of minimum contacts, *id.*, exercising jurisdiction over Defendants would violate the due process clause of the Fourteenth Amendment.

The court concludes that Plaintiff has failed to establish a prima facie case that personal jurisdiction exists because Defendants' limited connections and associations with MTI's Utah-based personnel do not establish that Defendants purposefully availed themselves of the benefits and privileges of the State of Utah.  The facts, even after resolving any disputes in Plaintiff's favor, are too limited and conclusory to establish sufficient minimum contacts in accordance with due process standards.  In light of the due process analysis, it is unnecessary for this court to consider the statutory basis for jurisdiction under Utah's long-arm statute.

10

## II.    Subject Matter Jurisdiction

Because a court must have both subject matter jurisdiction and personal jurisdiction in order to adjudicate a case on the merits, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999), this court does not need to determine whether subject matter jurisdiction is present in this case.  However, even Plaintiff acknowledges that, based on the face of the complaint, this court also lacks subject matter jurisdiction because there is not complete diversity between the parties. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978).  Ms. Newman resides in Nevada, N&N's primary place of business is within Nevada, and MTI is incorporated in Nevada.  Therefore, all parties are considered citizens of Nevada.  *See* 28 U.S.C. § 1332(c)(1).

While Plaintiff asserts that MTI conveyed all of its claims against Defendants to Manassas Travel Settlement Corporation on or about January 31, 2006, Plaintiff has failed to include any documentation relating to this assignment demonstrating that the conveyance was legitimate and not done for the purpose of manufacturing diversity.  As argued by Defendants, the timing of the incorporation and assignment as well as the fact that Plaintiff's litigation counsel was made the registered agent for the entity are highly suspect.[1]  The court finds that there is no basis for substituting Manassas Travel Settlement Corporation as the real party in interest.  Accordingly, this court also finds that it lacks subject matter jurisdiction over this case.

In light of this court's lack of jurisdiction over Defendants, the claims of improper venue

---

[1]At the hearing on this motion, Plaintiff requested an opportunity to brief these issues.  However, Defendants' initial motion argued that there was no diversity of citizenship.  It was incumbent upon Plaintiff to establish that diversity existed.  If Plaintiff had filed a formal motion to substitute plaintiff, it could have ensured its ability to file a reply.  Instead, Plaintiff made only a request for a substitution of parties in its Verified Memorandum in Opposition to Defendants' Motion to Dismiss and failed to provide the court with the assignment establishing the basis for substituting parties.

and *res judicata* are MOOT.  *D.L.*, 392 F.3d at 1229 (holding that a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim).  At the hearing on this motion, Plaintiff made an oral motion to disqualify Mr. Sapire.  Because Mr. Sapire only argued with respect to the *res judicata* claims, the court finds Plaintiff's oral motion to disqualify Mr. Sapire to be MOOT.

## CONCLUSION

Defendants' Motion to Dismiss is GRANTED and this case is dismissed for lack of jurisdiction over Defendants.

DATED this 14th day of July, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge